IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONNELL JONES,

        Plaintiff,

v.         Civil Case No. SAG-19-0467

CCBCC, INC.,

        Defendant.

## MEMORANDUM OPINION

Plaintiff Donnell Jones ("Plaintiff") filed this case against his former employer, CCBCC, Inc. ("Defendant"), alleging disability discrimination, failure to accommodate, and wrongful termination in violation of Maryland state law.[1] ECF 1-3. Discovery is now concluded, and the parties have filed cross-motions for summary judgment, along with various oppositions, replies, and supplements. ECF 26, 27, 28, 29, 38, 39, 40, 41, 42, 43, 44, 45, 46. I have reviewed the filings, and have determined that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, I will deny Plaintiff's Motion for Summary Judgment, ECF 38, and grant Defendant's Motion for Summary Judgment, ECF 42.

### I.     FACTUAL BACKGROUND

Plaintiff began working for Coca-Cola Refreshments ("CCR") in October, 2002, in a position requiring him to hold a Commercial Driver's License ("CDL").[2] ECF 42-3 (Borella Dep.)

---

[1] The Complaint originally named three other corporate entities as co-defendants, but the claims against those entities have been dismissed with prejudice. ECF 1-3; ECF 10.

[2] At some point, the company Plaintiff worked for was known as Coca-Cola Enterprises, although the exact chronology of the earlier corporate changes is unclear. ECF 42-4 at 9:6-10:7. Plaintiff's position remained constant throughout his tenure with the various companies.

at 23:20-23; ECF 42-4 (Plaintiff Dep.) at 10:2-7; 39:12-40:2. As a delivery merchandiser, Plaintiff drove a truck to deliver Coca-Cola products to customers in Maryland. ECF 42-4 at 107:4-109:1. At all relevant times, Plaintiff suffered from a detached retina in his right eye, which left him unable to pass the physical examination administered to CDL holders. ECF 42-5, Response 16. CCR required Plaintiff to obtain Maryland's intrastate vision waiver to maintain his position, which he did, last renewing his waiver in 2017. ECF 42-4 at 102:11-103:4; 111:5-11. During his entire tenure as a delivery merchandiser, Plaintiff performed his job duties without incident, and earned positive performance evaluations. ECF 42-2 (Padgett Dep.) at 36:13-22; ECF 43-18 (Cook Dep.) at 60:3-12; ECF 26-9 (Waters Dep.) at 21:10-21.

In April, 2016, Defendant acquired CCR. ECF 42-2 at 10:3-19. Plaintiff became an employee of Defendant as part of that transition. *Id.* (responding "I am" when asked if he is aware that Plaintiff transferred from Coca-Cola Refreshments to Defendant). Plaintiff's daily job remained the same after the transition, including his job description, his truck, his supervisors, and his compensation. ECF 42-4 at 158:17-159:5 (responding "That is correct" when questioner stated that his job description as a delivery merchandiser "didn't change" and that he had the same supervisors).

Defendant, as an interstate motor carrier, requires its drivers to comply with safety requirements imposed by the United States Department of Transportation ("USDOT"), including the USDOT vision waiver for employees unable to pass the required vision test. ECF 42-2 at 13:13-24; 24:14-20. In January, 2017, Plaintiff underwent his first required USDOT medical evaluation as an employee of Defendant, and he failed to meet the visual acuity requirement. ECF 43-22. Defendant's risk management company, Hireright, Inc. ("Hireright"), notified Defendant that Plaintiff would need the federal USDOT vision waiver in order to continue driving. ECF 42-4 at

2

50:3-14; ECF 43-22 (email from Hireright stating, "So unfortunately for now his exam will report as unqualified until a copy of a Federal Vision Exemption is provided."). Upon notification that Plaintiff did not meet the relevant requirements, Defendant immediately removed Plaintiff from the role of delivery merchandiser, and informed him that he would need to obtain the interstate vision waiver. ECF 42-4 at 50: 2-14 ("And he explained to me that I could no longer drive."); *see also* ECF 42-3 at 110:17-25; ECF 42-7 (Wine Decl.) ¶ 4.

At Plaintiff's suggestion, Defendant allowed him to work by training new delivery merchandisers. ECF 42-4 at 50:15-51:11. As such, Plaintiff trained drivers from January 12, 2017 through February 9, 2017. *Id.* at 56: 16-21. Eventually, however, the training role was no longer needed. ECF 26-10 (Waters Dep.) at 60:6-16 (explaining that the company typically does not have a training position available). On February 9, 2017, Defendant provided Plaintiff with a letter noting that he did not have an approved Federal Vision Waiver, and stating:

> At this time, you are being placed on a 60 day unpaid personal leave of absence. During this time, you are allowed to apply for open position [sic] for which you are qualified following our standard interview and selection process. . . . If at the end of 60 days, you have not been selected for another role then you will, at that time, be separated from the company.

ECF 43-28. Supervisory employees, Terry Waters and Craig Cook, met with Plaintiff on February 10, 2017, and instructed him to apply for open non-driving positions with the company. ECF 42-4 at 61:18-63:21. However, Plaintiff refused to sign the February 9, 2017 letter, left after work on February 10, 2017, and did not apply for any open positions. ECF 42-4 at 61: 21- 62: 6; ECF 42-5, Response 19.

On February 21, 2017, Plaintiff emailed the Human Resource ("HR") portal, stating:

> This is my request for reasonable accommodations – while I am able to do my job duties, the company has added a new technical requirement – while that is being fixed, I request accommodations of assignment to other duties.

3

ECF 43-15. Plaintiff's email did not mention a disability. HR responded that it had forwarded his request to the appropriate HR representative, and that Plaintiff should expect a response soon thereafter. *Id.*; ECF 42-4 at 74:16-21; 75:1-6.

HR employees attempted to reach Plaintiff by telephone for several days. ECF 42-7 ¶ 5 ("After receiving Donnell Jones's February 21 request for accommodation, CCCI made several attempts to contact Mr. Jones to discuss his request."); ECF 43-17 (text exchanges between Plaintiff and Human Resources). On March 6, 2017, a Human Resource Business Partner, Angenella Fleming, spoke to Plaintiff by telephone. ECF 42-4 at 129:6-130:2. Following the conversation, Plaintiff texted Fleming to ask whether, if he received his interstate waiver while on leave, he could return to his prior position as delivery merchandiser without having to reapply. ECF 43-17. Fleming confirmed Plaintiff's understanding. ECF 42-4 at 76: 2-12.

In April, 2017, USDOT denied Plaintiff's application for an interstate vision waiver. ECF 42-4 at 77:3-21. Because Plaintiff could not fulfill the requirements to serve as a delivery merchandiser, and had not applied for any other positions, Defendant terminated his employment. *See* ECF 42-3 at 44:12-22. According to Plaintiff, he did not receive a letter of termination, and he emailed HR multiple times in April and May, 2017, inquiring about his job status. ECF 43-16.

## II. LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving

party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

## III.  ANALYSIS

Plaintiff's Complaint contains three Counts, each brought pursuant to Maryland's Fair Employment Practices Act ("FEPA"), Maryland Code, State Gov't, Title 20 § 606: (1) discrimination on the basis of actual and/or perceived disability and/or record of impairment; (2)

5

failure to accommodate; and (3) wrongful termination. In relevant part, FEPA provides that an employer may not:

> fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of . . . disability unrelated in nature and extent so as to reasonably preclude the performance of the employment.

§ 20-606(a)(1)(i). For each of Plaintiff's claims, then, he first must establish that he had a disability, in order to invoke FEPA's protections. *See Peninsula Regional Medical Center v. Adkins,* 448 Md. 197, 213 (2016).

The parties are in general agreement as to the elements Plaintiff has to prove to establish his claims. The Court notes that the Maryland courts have issued few decisions interpreting FEPA. *Peninsula,* 448 Md. at 209. Accordingly, courts construing FEPA's provisions have looked to cases interpreting the federal Americans with Disabilities Act ("ADA") for guidance, because the statutes contain similar clauses and address similar purposes. *Id.* at 219 ("Although we cannot use case law construing federal statutes as a 'surrogate for analysis' of the meaning of Maryland law, we can look to federal decisions interpreting ADA provisions for guidance in construing similar clauses in FEPA."). In describing the elements of disability discrimination, Plaintiff's original motion cites to the disability discrimination provisions in the Montgomery County Code (from Montgomery County, Maryland). ECF 26-1 at 15.[3] Plaintiff's error highlights the essential similarities among the various anti-discrimination regimes, because the standards of the Montgomery County Code, while patently inapplicable to Plaintiff's case, are virtually indistinguishable from the requirements of FEPA or the ADA. Each initially requires a plaintiff

---

[3] Some of Plaintiff's filings do not contain page numbers, making it impossible to provide precise citations to his arguments. For purposes of this Motion, the Court will use the electronically-generated pagination in the ECF filings.

to establish a physical or mental impairment, causing a substantial limitation in the plaintiff's ability to engage in one or more major life activities. *See Ridgely v. Montgomery County, Maryland,* 164 Md. App. 214, 227 (2005) (citing the Montgomery County Code. § 27-6(r)); *Boitnott v. Corning, Inc.,* 669 F.3d 172, 174 (4th Cir. 2012) (noting the ADA definition of "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual.")

### A. Plaintiff Has Not Established a Disability

Plaintiff concedes that all of his claims require a showing that he had a disability within the meaning of FEPA. *See, e.g.*, ECF 26-1 at 17 (" To establish a *prima facie* case for a failure-to-accommodate claim, the employee-plaintiff must show: (1) that he or she was an individual with a disability…"); *Id.* at 15 ("The *prima facie* case for disability discrimination is three-pronged"); ECF 1-3, Complaint (stating Defendant terminated Plaintiff because of his protected status as having a disability and/or a perceived disability). Thus, the paramount issue here is whether Plaintiff's detached retina constitutes a disability. FEPA defines "disability" to include "blindness or visual impairment." Md. Code Ann., State Gov't § 20-601(b)(2). For a person suffering from blindness or visual impairment to be disabled for purposes of the FEPA, the disability has to *substantially* limit one or more major life activities. *See Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 566 (1999). Plaintiff argues that his visual impairment causes substantial limitation in two major life activities: seeing and working. ECF 43 at 15.

Plaintiff's detached retina does not substantially limit his ability to see, as evidenced by his functional capacity. In *Perry v. Kappos*, 489 F.App'x 637, 641–42 (4th Cir. 2012), the Fourth Circuit found, in the context of the Rehabilitation Act, that a plaintiff had not demonstrated substantial limitations to the major life activity of seeing. In that case, the plaintiff had no vision

in his left eye and reduced vision in his right eye. *Id.* at 638. Despite these vision problems, however, he was still able to perform "critical tasks" such as driving at night, maintaining a driver's license, and reading efficiently. *Id.* at 642. Moreover, his vision had not prevented him from performing the essential functions of his job as a patent examiner. *Id.* Other courts, similarly, have used driving as a benchmark for determining substantial limitation in the ability to see. *See Foore v. City of Richmond, Va.,* 6 F.App'x. 148, 152–53 (4th Cir. 2001) (determining that a monocular police officer who could read and had a driver's license had not established disability as a result of visual impairment); *Coghill v. Board of Educ. Of Prince George's County,* Civil No. GJH-14-2767, 2017 WL 1049470, at *6 (D. Md. Mar. 17, 2017) (finding plaintiff had not established a disability despite complete loss of vision in one eye and declining vision in the other, in light of ability to drive); *Wyatt v. Maryland Institute*, Civil No. RDB-10-2584, 2012 WL 739096, at *6 (D. Md. Mar. 7, 2012) (finding that security officer with glaucoma and restricted ability to drive at night had not established disability in light of his ability to drive, maintain a valid driver's license, and care for himself).

In this case, Plaintiff obviously retains the ability to drive vehicles, given the nature of his claims. In fact, Plaintiff not only *can* drive, but also has been *employed* as a driver, and currently holds a Maryland CDL. Although he has been unable to secure employment as an interstate CDL driver, he admits that he has applied for positions as a CDL driver in multiple companies . ECF 42-4 at 13:3-5; 28:20-21; 82:1-16; *see also* ECF 43-2 at 5 ("After Plaintiff was fired from the Defendant, Plaintiff submitted twenty-nine (29) applications to prospective employers for a CDL truck driving job."). Furthermore, much like the plaintiff in *Perry*, Plaintiff performed his job — as a CDL driver in particular — despite any vision issues. At deposition, Plaintiff deflected any questions about other limitations in his daily activities as a result of his vision, simply saying he is

"used to it." ECF 42-4 at 71:5-14. Thus, Plaintiff has adduced no evidence that, at the time of his termination, he suffered from any substantial limitation in his ability to see.[4]

Plaintiff also has not demonstrated a genuine issue of material fact with respect to any substantial limitation in his ability to work. To establish a substantial limitation, the plaintiff must demonstrate that his impairment precludes participation in "a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Boitnott,* 669 F.3d at 174–75. Under that standard, the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* In *Carothers v. County of Cook*, 808 F.3d 1140 (7th Cir. 2015), the plaintiff alleged that a government-operated juvenile detention center discriminated against her, in violation of the ADA. As part of her claim, she argued that a mental impairment — specifically an anxiety disorder — prevented her from interacting with juvenile detainees. *Id.* at 1147–48. According to the court, however, "interacting with juvenile detainees is a *unique* aspect of the *single specific* job of working as a hearing officer at a juvenile correctional center." *Id.* at 1148. Furthermore, there was no evidence that the disorder would "prevent her from engaging in any other line of occupation." *Id.* Here, in fact, Plaintiff does not allege an inability to perform *any* job. To the contrary, he alleges that he is fully capable of performing the job of an interstate CDL truck driver, and only contests Defendant's decision to enforce the federal vision waiver standards. *See, e.g.*, ECF 26-1 at 19 ("Plaintiff did not need a federal interstate vision waiver to perform his job because, even though Defendant required its delivery drivers to obtain federal interstate vision waivers as early as April 30, 2016, Plaintiff continued his job as a delivery merchandiser from April 30, 2016 –

---

[4] The subsequent medical records Plaintiff has provided, in which he reports occasional blackouts in the vision in his right eye, post-date the relevant employment actions in this case. *See, e.g.,* ECF 42-8 at 1 (medical chart note from January 6, 2018).

January 11, 2017"). The fact that Plaintiff's visual impairment prevents him from getting that waiver, however, still only precludes his participation in one specific job: that of a CDL truck driver for an *interstate* motor carrier. As noted above, Plaintiff retains the ability to work, even in driving jobs, for entities who do not require drivers to obtain that federal waiver. *See* ECF 43-2 at 5 (noting Plaintiff's current "non-CDL truck driver job as a Warehouse associate driver [at] his current employer Dealer Tire"). Plaintiff's capacity to work at a broad range of jobs, not requiring the federal vision waiver, precludes a finding that Plaintiff is substantially limited in his ability to work.

In his opposition to Defendant's motion, Plaintiff suggests that Defendant regarded him as disabled, and fired him, because of his visual impairment. ECF 43-2 at 15. That argument is unpersuasive. *See Murphy v. United Parcel Serv.*, 527 U.S. 516, 524 (1999) ("The evidence that petitioner is regarded as unable to meet the DOT regulations is not sufficient to create a genuine issue of material fact as to whether petitioner is regarded as unable to perform a class of jobs utilizing his skills.") To show that Defendant regarded Plaintiff as disabled, he must show that Defendant mistakenly believed that he had a physical impairment that substantially limited a major life activity or that Defendant mistakenly believed that an actual impairment substantially limited a major life activity. *See Rhoads v. FDIC*, 257 F.3d 373, 390 (4th Cir. 2001); *see also Farmer v. Macy's, Inc.*, 2019 WL 498817, at *2 (D. Md. Feb. 8, 2019). As noted above, Plaintiff alleges that the major life activities of "seeing" and "working" have been substantially limited by his visual impairment. There is no evidence that Defendant regarded Plaintiff as substantially limited in his ability to see. Plaintiff relies on the fact that "Defendant took Plaintiff off of driving on January 11, 2017." ECF 43-2 at 15. However, Plaintiff also conceded that Defendant's HR representative stated he could return to his driving position if he could successfully obtain the federal vision

waiver. ECF 42-4 at 76 ("She said yes, you'll go right back to your same driving position like nothing ever happened.").

With respect to "working," the uncontested evidence shows that Defendant did not consider Plaintiff unable to perform a class of jobs or a broad range of jobs. Namely, Plaintiff submits no evidence that Defendant believed he was unable to operate a truck as a result of a disability. Rather, the only evidence demonstrates that Defendant learned in January, 2017, that Plaintiff did not have the vision waiver required by USDOT for a driver with his visual acuity. Additionally, Plaintiff concedes that Defendant encouraged him to apply to other positions in the company. *See* ECF 42-4 at 63. At most, Defendant regarded Plaintiff as unable to perform a single, specific job, *i.e.*, commercial truck driving for an interstate motor vehicle carrier, because he did not have the requisite federal vision waiver.

Because Plaintiff cannot show that his detached retina has caused a substantial limitation in one or more major life activities, he does not have a qualifying disability for purposes of FEPA. Thus, all three of his claims fail on this basis alone.

**B. Plaintiff Cannot Establish that He Could Perform the Essential Duties of His Position**

Even if Plaintiff had been able to establish a disability, to prove his claims, he would have to show that he is a qualified individual with a disability. In other words, Plaintiff would have to establish that with reasonable accommodation, he could perform the essential functions of his position. *See Jacobs v. N.C. Admin. Office of the Cts.,* 780 F.3d 562, 579-80 (4th Cir. 2015); *see also Peninsula Regional Medical Ctr. v. Adkins*, 448 Md. 197, 213 (2016) (listing, as part of a prima facie case for failure to accommodate claim, demonstration "that with reasonable accommodation, he or she could perform the essential functions of the position").

However, under the law, Plaintiff is not qualified to serve as an interstate CDL driver. In *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999), the Supreme Court considered a case involving a truck driver who failed to meet the USDOT's visual acuity standards. The truck driver applied for a Federal Vision Waiver, but Albertson's terminated him before he received a response to his waiver application. *Id.* at 560. He eventually received the waiver, but Albertson's refused to rehire him. *Id.* In response to the truck driver's contention that Albertson's should have made its own determination of the visual criteria required to fulfill its position, the Supreme Court found that Albertson's lacked discretion to disregard the USDOT's visual acuity standards for interstate truck drivers. *Id.* at 570, 579 ("The validity of these regulations is unchallenged, they have the force of law"). Numerous other federal courts, in the wake of *Albertson's,* have deemed commercial drivers who are unable to obtain USDOT certification to be unqualified for their positions, as a matter of law. *See, e.g., Williams v. J.B. Hunt Transp., Inc.,* 826 F.3d 806, 812 (5th Cir. 2016) ("Because he lacked the DOT certification required by federal law, [Defendant] could not let him return to driving, and the company's administrative termination of [Plaintiff] did not violate the ADA."); *Hawkins v. Schwan's Home Svc., Inc.,* 778 F.3d 877, 895 (10th Cir. 2015) ("[A]s a matter of law, if an essential function of a position is the ability to operate a commercial vehicle, then being DOT-certified is an automatic, binding, and utterly unavoidable requirement."); *Bay v. Cassens Transport Co.,* 212 F.3d 969, 973-75 (7th Cir. 2000) ("Cassens was entitled to rely on Bay's failure to obtain certification in refusing to allow him to resume his employment as a commercial truck driver"); *see also Jarvela v. Crete Carrier Corp.,* 776 F.3d 822, 831 (11th Cir. 2015) (stating that because Plaintiff was diagnosed with alcoholism, "he could not qualify as a commercial motor vehicle driver under DOT regulations"); *Campbell v. Federal Exp. Corp.,* 918 F.Supp. 912, 920 (D. Md. 1996).

Like the truck driver in *Albertson's*, Plaintiff repeatedly contests Defendant's "decision" to require the federal vision waiver, citing the fact that Plaintiff performed the same job, on the same route, for many years for CCR without incident. *See generally* ECF 43-2. The record is clear, however, that Defendant is an interstate motor carrier, subject to USDOT regulation. Essentially, Plaintiff repeatedly conflates Defendant with CCR, although they were two separate employers operating under separate sets of policies. *Compare* ECF 43-2 at I.A.1 (Plaintiff's brief arguing, "Plaintiff's Supervisor Craig Cook testified that although Defendant is registered with the DOT, which would require Defendant's employees to be able to drive interstate, it was never enforced.") *with* ECF 43-18 (Cook Dep.) at 66:14-19 ("[Defendant] is registered with the Department of Transportation as an interstate motor carrier so that would require everybody driving for the company to be able to drive interstate. And CCR from my understanding was the same, but it was never enforced."). Regardless of the former CCR's practices, Defendant is legally required to abide by the USDOT's Motor Carrier Safety Regulations, as described in *Albertson's*. Under those regulations, Plaintiff is not qualified for the position of delivery merchandiser as a matter of law. *See Zei v. Md. Transit Admin.*, 433 Md. 254, 259 (2013) ("If an individual fails to meet a properly imposed qualification standard, then that individual is not a 'qualified individual' for purposes of the ADA and cannot maintain a discrimination claim.").

To the extent Plaintiff contends that he could be a qualified individual with a disability if afforded the reasonable accommodation of a different position, his argument is unpersuasive on the record he has provided. Although reassignment to a vacant position can constitute a reasonable accommodation in certain circumstances, *see U.S. Airways v. Barnett,* 535 U.S. 391 (2002), Plaintiff has made no showing of a vacant position here. To the contrary, Plaintiff ardently refused to apply for any vacant positions, and has not identified any for this Court's consideration. Plaintiff

cites no authority for his interpretation that his request for accommodation (which made no mention of disability), required Defendant to install him in a new position for which he had not applied. In fact, his argument runs contrary to established precedent which contemplates an application process. *See, e.g.*, *U.S. Airways,* 535 U.S. at 402-05 (discussing evaluation of a reasonable accommodation request by one employee in conjunction with another applicant's rights under an established seniority system).

Plaintiff finally alleges that Defendant acted in bad faith by failing to engage in an "interactive process" regarding his request for an appropriate accommodation. ECF 43. Initially, because Plaintiff has failed to establish a disability, or cite a disability in his request for accommodation, an interactive process was not required. *See Peninsula*, 448 Md. at 212 (stating federal regulatory disability discrimination law requires an interactive process for an individual "with a disability in need of the accommodation" and requiring a similar process under the FEPA regime). Even if it had been required, however, this Court does not ascribe fault to Defendant for the failure of the parties' discussions. As set forth above, Plaintiff was instructed to apply for open positions in the February 9, 2017 letter and the February 10, 2017 meeting, but declined to do so. Once Plaintiff eventually spoke with an HR representative after his request for accommodation, his follow-up question related to his possible ability to resume his delivery merchandiser position, rather than identifying an alternative role. *See, e.g.*, ECF 42-4 at 130–31. In the absence of evidence of a vacant position that should have been considered as an accommodation, even if Plaintiff could establish a failure to engage in an interactive process, liability would not accrue. *See Wilson v. Dollar Gen. Corp.,* 717 F.3d 337, 347 (4th Cir. 2013) ("[A]n employer who fails to engage in the interactive process will not be held liable if the employee cannot identify a reasonable accommodation that would have been possible.").

14

Because Plaintiff could not perform the essential functions of the position with or without a reasonable accommodation, and thus was not qualified for the employment, his claims must fail.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF 42, will be GRANTED, and Plaintiff's Motion for Summary Judgment, ECF 38, will be DENIED. A separate Order follows.

Dated: December 18, 2019                                                            /s/
                                                                               Stephanie A. Gallagher
                                                                               United States District Judge